IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN THE MATTER OF SUBPOENA TO EUGENIO TORRES-OYOLA, FERRAIUOLI LLC AND TIERRA INTELECTUAL BORINQUÉN, INC.<br><br>Telinit Technologies LLC<br><br>v.<br><br>Uniden America Corp.<br><br>13-cv-743-JRG (Lead Case)<br><br>United States District Court for the Eastern District of Texas Marshall Division | MC No. 14-_314 (PAD)_<br><br>MOTION TO QUASH<br><br> |

## MOTION TO QUASH OR MODIFY SUBPOENAS

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Eugenio Torres-Oyola ("Torres-Oyola" or "Movant"), Ferraiuoli LLC ("Ferraiuoli" or "Movant") and Tierra Intelectual Borinquén, Inc., ("Tierra" or "Movant") (together as "Movants") non-parties to the proceedings in civil case *Telinit Technologies LLC v. Uniden America Corp.*, 13-cv-743-JRG (Lead Case) ("Telinit"), and also Torres-Oyola and Ferraiuoli counsels for Plaintiff, Telinit Technologies LLC, file the following motion to quash or modify subpoenas:

### INTRODUCTION

On July 31, 2014, Movants were served with Subpoenas to Produce Documents, Information, or Objects or to Permit Inspection of Premises issued at the behest of Defendant Spotify USA, Inc., ("Spotify") at the offices of Simpson Thacher & Bartlett in Palo Alto, California. (A copy of the Subpoenas is attached as

1

Exhibits A, B and C)

Torres-Oyola, Ferraiuoli and Tierra move to quash the subpoenas in their entirety or to modify them on the following grounds. First, the subpoenas impermissibly seek to circumvent the rules of discovery between parties under Rule 34 by using a subpoena to request documents and information directly from third parties, one of them Plaintiff's counsel and his law firm, and also seeking privileged information that is protected from discovery. Second, the subpoena is duplicative because it seeks the production of documents and information already requested or that should be requested from the party in a Rule 34 request for documents and in compliance with the discovery orders issued by the district court where the action is held. Third, the subpoenas command the production of documents beyond the 100 miles provided for in Rule 45(c)(2)(a).

## FACTUAL BACKGROUND

### a. Court orders concerning discovery

In lieu of disclosures required by Rule 26, at the beginning of case the court in the Eastern District of Texas, Marshall Division, issued a Discovery Order directing the parties to disclose potential parties, fact and expert witnesses, statements of any party to the litigation, produce documents and electronically stored information ("ESI") relevant and in possession and control of the parties, and a computation of the parties' damages with their supporting documents, among others.[1] The Discovery Order also requires the parties to comply with the Patent Rules for the Eastern District of Texas and sets the following limitations to written

---

[1] A copy of Docket No. 25-Discovery Order-is attached as **Exhibit D**

discovery:

a) **Interrogatories.** Each side[2] is permitted 15 common interrogatories. Each Defendant can propound up to 15 additional individual interrogatories, and Plaintiff can propound up to 15 additional individual interrogatories per Defendant.

b) **Requests for Admission.** Each side will be permitted up to 15 common requests for admission. Additionally, each Defendant can propound up to 20 additional individual requests for admission, and Plaintiff can propound up to 20 additional individual requests for admission per Defendant. The parties are to serve 100 requests for admission as to authentication and/or other admissibility issues, subject to agreeing to stipulations and engaging in meet and confer, when necessary.

The Discovery Order is as specific as to establish the number of hours for all depositions to be taken, the number of expert reports and for how long the parties' expert witnesses can be deposed.[3] Modification to the Discovery Order is subject to a showing of good cause.[4]

The Texas District Court also established a detailed process to manage disputes between the *parties* regarding privileged information. The Discovery Order indicates that "[t]here is **no duty** to disclose privileged documents or information." The parties are directed to meet and confer concerning privileged documents or

---

[2] "Side" means a party or a group of parties with a common interest. Docket 25, p. 4, n. 2
[3] For example, if an expert issues a report addressing the alleged infringement or non-infringement of Defendant One, Defendant Two, and Defendant Three, the expert would be subject to a maximum of 14 hours of deposition (7 + 3 ½ + 3 ½) as to that report. Docket 25, p. 6
[4] See **Exhibit D**, Docket No. 25- *Telinit's* Discovery Order, p. 5-6

3

information (**in-person conference involving lead and local counsel for all parties to the discovery dispute**); exchange privilege logs; file motions to compel, when necessary, and responses thereto with supporting declarations or affidavits, along with the documents over which privilege is asserted for *in camera* inspection.[5] In accordance with the Docket Control Order, the **deadline** to substantially complete document production and exchange privilege logs is August 14, 2014.[6]

What is more, the Texas District Court has a Discovery Hotline as provided by Local Rule CV-26(e), and parties are instructed to contact the judge's chambers *before* resorting to the "hot-line". If the judge is not available, the parties must proceed in accordance with Local Rule CV-26(e). The court forewarned that "[a] party is not excused from the requirements of this Discovery Order because it has not fully completed its investigation of the case, or because it challenges the sufficiency of another party's disclosures, or because another party has not made its disclosures."[7]

Trade secrets, confidential business information and proprietary information to be exchanged by the parties during discovery are protected by an elaborate and thorough Stipulated Protective Order Governing Exchange and Use of Discovery Materials. The Protective Order was reissued later in the proceedings after consolidating another action involving Telinit into the Lead Case identified in the caption of this motion.[8]

---

[5] See **Exhibit D**-Docket No. 25, *Telinit's* Discovery Order, p. 6-7
[6] See **Exhibit E**-Docket No. 35, Order on Joint Motion to Modify Case Schedule
[7] See **Exhibit D**-Docket No. 25, *Telinit's* Discovery Order, p. 8-9
[8] See **Exhibit E**-Dockets No. 27 and 34, Protective Orders

In accordance with the Federal Rules Civil Procedure and the numerous discovery orders issued in Telinit, the processes developed by the parties and the court apply to the parties in the action only (except as to confidential information belonging to third parties), not to third parties subject to subpoenas pursuant to Rule 45. It is evident that Spotify moved to subpoena Torres-Oyola, Ferraiuoli and Tierra to circumvent Rule 34 and the discovery orders issued in Telinit.

### b. Discovery propounded by Spotify

The discovery orders being issued, the parties engaged in significant discovery including written requests and depositions. For the sake of brevity and relevancy, we will not enumerate here Telinit's discovery notifications to defendants, Spotify among them.

On May 13, 2014, pursuant to the Discovery Order, Spotify notified a list of documents that it thought to be relevant and within the scope of Telinit's discovery duties.[9] After Spotify's letter of May 13th, it notified "Spotify's First Set of Interrogatories to Telinit (Nos 1-9)" on May 19, 2014.[10] A set of defendants' common interrogatories was notified on June 3, 2014.[11] On July 18, 2014, Telinit responded to Defendant's First Set of Common Interrogatories while also supplementing its disclosures in compliance with the Discovery Order.[12] Additional written requests, answers thereto, objections and responses to such objections have been exchanged

---

[9] See **Exhibit F**-Letter of May 13, 2014 from Spotify to Telinit through counsel
[10] See **Exhibit G**- Spotify's First Interrogatories
[11] See **Exhibit H**-Defendant's First Set of Common Interrogatories to Telinit (Nos. 1-9)
[12] See **Exhibit I**- Telinit Technologies, LLC'S Answers to Defendant's First Set of Common Interrogatories

by Telinit and Spotify between June and August 2014.[13] Discovery is still ongoing.

## ARGUMENT

Defendant Spotify's subpoenas violate the Federal Rules of Civil Procedure and the Discovery Order. Under Rule 45, a court is required to quash a subpoena that requires the disclosure of privileged or other protected matter, subjects a person to undue burden or command the production of documents beyond the 100 miles where the person lives, is employed or transacts business. Most importantly, Spotify's subpoena would frustrate the rules of discovery. A subpoena served on a party's counsel or a non-party cannot be used to circumvent the rules of discovery.

### a. Spotify's subpoenas require the disclosure of privileged or other protected matter.

Under Federal Rule of Civil Procedure 45, a court must quash or modify a subpoena if it (1) requires a person who is not a party to travel more than 100 miles from where the person resides; (2) requires disclosure of privileged or protected matter; or (3) subjects a person to undue burden. Fed.R.Civ.P. 45(d)(3)(A). The movant has the burden of demonstrating that the material sought by the subpoena is privileged or protected, or that production would result in an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir.2004). The subpoenaing party has the burden of establishing that the requested information is relevant to its claims or defenses. *Heidelberg Americas, Inc., v. Tokyo Kikai Seisakusho*, 333 F.3d 38, 42 (1st Cir. 2003)

Neither a subpoena duces tecum, nor any other procedure in a civil action,

---

[13] See **Exhibit J**-Letters of June 5, 2014; June 12, 2014; June 24, 2014; August 1, 2014 (2).

6

may be used by a party to obtain privileged documents; the policy protecting privileged communications simply is too strong to allow subpoenas to undermine it. Wright and Miller, 9A Fed. Prac. & Proc. Civ. § 2458 (3d ed.)

In the subpoenas Spotify is seeking the following information, which is clearly privileged or protected information or that encompasses information subject to the attorney-client privilege and/or is work product:

### DOCUMENT REQUEST NO. 4:

ALL <u>COMMUNICATIONS</u> between or among YOU[14] and ODOM, FTE, TIERRA, Dr. Beatriz Lopez, DLG, and/or TELINIT, including, but not limited to COMMUNICATIONS RELATING TO the '942 PATENT, any member of the '942 PATENT FAMILY, any ODOM PATENT, ODOM, FTE, TIERRA, TELINIT, SPOTIFY, or DYNAMIC NETWORKING.

### DOCUMENT REQUEST NO. 6:

DOCUMENTS and THINGS sufficient to show the date of any <u>invoices, payments, or royalties</u> concerning any agreements between YOU and ODOM, FTE, TIERRA, TELINIT, Dr. Beatriz Lopez, or DLG.

### DOCUMENT REQUEST NO. 8:

---

[14] "TORRES-OYOLA," "YOU," or "YOUR" means and includes Eugenio Torres-Oyola, an individual, and all employees, agents, consultants, attorneys, accountants, administrators, and all other PERSONS or organizations or others acting or purporting to act on his behalf, or under his control, including all temporary employees and independent contractors. See **Exhibit A**-Subpoena addressed to Torres-Oyola, p. 9.
"FERRAIUOLI," "YOU," or "YOUR" means and includes Ferraiuoli LLC, a Puerto Rico law firm, and all subsidiaries and affiliates thereof, all divisions, predecessors, successors, and assigns; and all current officers, directors, employees, agents, consultants, attorneys, accountants, administrators, and all other PERSONS or organizations or others acting or purporting to act on its behalf, or under its control, including all temporary employees and independent contractors, and including Mr. Eugenio J. Torres-Oyola. See **Exhibit B**-Subpoena addressed to Ferraiuoli, p. 9.
"TIERRA," "YOU," or "YOUR" means and includes Tierra Intelectual Borinquen, Inc. and all subsidiaries and affiliates thereof; all divisions, predecessors, successors, and assigns of each of the foregoing; and all current officers, directors, employees, agents, consultants, attorneys, accountants, administrators, and all other PERSONS or organizations or others acting or purporting to act on behalf, or under the control, of each of the foregoing, including all temporary employees and independent contractors, and including, but not limited to, Dr. Beatriz Lopez and Mr. Ruben DeLeon. See **Exhibit C**-Subpoena addressed to Tierra, p. 9.

All DOCUMENTS and THINGS RELATING TO any <u>opinion(s), investigation(s), or study(ies)</u> RELATING TO the: (a) patentability or unpatentability; (b) infringement or non-infringement; (c) invalidity or validity; and/or (d) unenforceability or enforceability of the '942 PATENT or any member of the '942 PATENT FAMILY.

**DOCUMENT REQUEST NO. 9:**

All DOCUMENTS and THINGS RELATING TO any <u>opinion(s), investigation(s), or study(ies)</u> RELATING TO the scope, construction, or interpretation of any claim of the '942 PATENT or any member of the '942 PATENT FAMILY.

**DOCUMENT REQUEST NO. 10:**

All DOCUMENTS and THINGS RELATING TO SPOTIFY or any SPOTIFY product, including all DOCUMENTS and THINGS showing how and when such DOCUMENTS and/or THINGS came <u>into YOUR possession</u>, custody, or control.

**DOCUMENT REQUEST NO. 11:**

All DOCUMENTS and THINGS RELATING TO YOUR <u>document retention policies</u>.

The requests referred above are identical in the subpoenas addressed to Torres-Oyola and Ferraiuoli.[15] Tierra's subpoena is also essentially identical except that is seeks communications and invoices with and from Ferraiuoli. Tierra and Ferraiuoli, through Torres-Oyola, also have an attorney-client relationship.

While it is an established principle that the public has a right "to every man's evidence," the attorney-client privilege is an exception to that rule. P. Rice, ATTORNEY-CLIENT PRIVILEGE IN THE U.S. § 2:3, citing *Upjohn Company v. United States*, 101 S.Ct. 677, 683 (1980). The attorney-client privilege is the oldest of the

---

[15] See **Exhibits A and B**-Subpoenas addressed to Torres-Oyola and Ferraiuoli, p. 15-16

privileges for confidential communications known to the common law. *Upjohn Company,* 101 S.Ct. at 683. The purpose of the privilege in the United States has always been to encourage people to seek legal advice freely and to communicate candidly with the attorney during those consultations. Complete client disclosure helps to ensure quality legal advice and assistance and makes it possible for the client to better understand his obligations and responsibilities under the law. This, in turn, will increase the law's effectiveness. P. Rice, ATTORNEY-CLIENT PRIVILEGE IN THE U.S. § 2:3.

Whatever the scope of the privilege, its application must be clear and consistent. Only through clarity and consistency is there predictability, and only through predictability can there be confidence in the protection and a willingness by clients to rely upon it. Id.

The most important issue to consider upon evaluating the entirety of Spotify's requests is that they are directed to Telinit's attorney of record and the law firm where he is employed, Ferraiuoli. By directing its requests to Torres-Oyola and Ferraiuoli, Spotify seeks disclosure of "precisely what the attorney-client privilege was designed to protect–the substance of the communication from the client" Id. The court should quash the entire subpoenas served on Torres-Oyola and Ferraiuoli because, as expressed below, "the sounder approach is to require that the discovery request be made to the client because of the inherent revelations involved in disclosures by counsel". Moreover, Spotify has indeed sought the same discovery or essentially the same discovery from Telinit and discovery is still ongoing.

> [T]he courts are constantly faced with the question of whether that *information* may be discovered *from* the *attorney* after the attorney has acquired it from the client.
>
> Although attorneys, like all other individuals, must disclose information within their knowledge that is relevant to the litigation in which the discovery is sought or that will assist in the discovery of other relevant information, the attorney has no obligation to—**indeed, may not**—disclose information that would breach the confidentiality that the attorney-client privilege protects. Consequently, **whenever the attorney lacks personal knowledge of the information sought because the client was the source of his knowledge, the attorney should be privileged to refuse to supply the information.**
>
> Although supplying the information may not necessarily reveal the confidential source (perhaps because there could logically be several sources independent of the client), the knowledge should still be privileged because **once information is supplied, its source would be obvious when the attorney is asked about the basis of his knowledge and asserts the attorney-client privilege.** Because the status of the attorney as a potential witness to those facts necessarily must be ascertained, questions addressed to the basis would follow the attorney's answer. Thus, the initial information must be protected. **Any other result would allow the attorney-client privilege to be circumvented by the simple expedient of redirecting discovery requests to the attorney that would normally be directed to the client.** Logically, if the communication of this information to the attorney was intended to be confidential and if that expectation was reasonable, such disclosures should not be required because they will reveal, albeit indirectly, precisely what the privilege was designed to protect—the substance of the communication from the client. Although disclosure has been ordered where the information was not privileged in the hands of the client, theoretically, **the sounder approach is to require that the discovery request be made to the client because of the inherent revelations involved in disclosures by counsel.**

P. Rice, ATTORNEY-CLIENT PRIVILEGE IN THE U.S. § 5:13.

Attorney-client communications are clearly protected as are invoices with written explanations of the work involved and that may reveal strategies and other work product and attorney-client communications. See P. Rice, Attorney-Client Privilege in the U.S. § 6:18. Also, Spotify's requests are overly broad because they request investigations, evaluations, studies and opinion(s) regarding the issues in controversy. Because the subpoenas are addressed to Telinit's counsel and his law firm, they clearly imply that the requests are seeking the strategies, analysis and mental impressions of plaintiff's counsel. Otherwise, the requests would have been addressed to Telinit. Such requests are not allowed. (See **Exhibit K**-Privilege Log in Compliance with R. 45)

The same privileges and protections apply to all communications, invoices, investigations, evaluations, studies and opinion(s) between Ferraiuoli, Torres-Oyola and Tierra. Spotify cannot seek discovery of information from a third party that would otherwise be privileged or protected had it sought it from Telinit.

### b. The subpoenas subject plaintiff's counsel, his law firm and non-party Tierra to undue burden.

A district court may quash or modify a subpoena if it seeks discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; [or] the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed.R.Civ.P. 26(b)(2)(C)(i). See *Ameristar Jet Charter v. Signal Composites, Inc.*, 244 F.3d 189 (1st Cir. 2001)

Whether a subpoena imposes an " 'undue burden' upon a witness is a case

specific inquiry that turns on 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.' *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y.1996)" *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D.Ohio 1999). See also *Heidelberg Americas, Inc., v. Tokyo Kikai Seisakusho*, 333 F.3d 38, 42 (1st Cir. 2003)

Demonstrating relevance is the burden of the party seeking discovery. *Katz v. Batavia Marine & Sporting Supplies*, 984 F.2d 422, 424-25 (Fed.Cir.1993); *Am. Elec. Power Co., Inc.*, 191 F.R.D. at 136. Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents. *See Katz v. Batavia Marine & Sporting Supplies*, 984 F.2d 422, 424 (Fed.Cir.1993)

Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs. *Cusumano v. Microsoft Corp.*, 162 F.3d 708 (1st Cir. 1998)

Spotify's requests are clearly duplicative. A review of the discovery requests attached to this motion show that Spotify has already requested the same information from Telinit. Moreover, most if not all of Spotify's requests are encompassed in the disclosures covered by the Discovery Order. Spotify has not abided by the process dictated by the Discovery Order to object or compel

production, most specially, the requirements regarding Privileged Information.[16] Some of Spotify's requests to Telinit relevant to this motion follow:

1. All documents referring or relating to the Patent-in-Suit, its prosecution, patent applications, ownership or assignment.

2. All documents relating to the conception, reduction to practice, and/or development of the subject matter of the Patent-in-Suit.[17]

3. All documents concerning any opinions, investigations, studies relating to the patentability or un-patentability, infringement or non-infringement, invalidity or validity, enforceability or unenforceability of the Patent-in-Suit.

4. All documents concerning any opinions, investigations, studies relating to the scope, construction, interpretation of any claim of the Patent-in-Suit.

5. All documents used or otherwise relied upon by in-house or outside counsel in forming opinions concerning the Patent-in Suit.

6. All documents referring to or constituting any communications with or among Telinit, Gary Odom, Patent Hauk LLC, Eugenio Torres-Oyola, Bo Davis, Patrick Anderson, Dr. Beatriz Lopez, Ruben De Leon, Patent Calls, Inc., FTE Exchange, LLC, and/or Tierra Intelectual Borinquen Inc.[18]

See **Exhibit F**-Letter of May 13, 2014 from Spotify to Telinit through counsel.

As can be appreciated, Spotify's subpoena requests are clearly duplicative, have no reference to time periods and fail to show the need to request them from

---

[16] See **Exhibit C**-Docket No. 25, *Telinit's* Discovery Order, p. 6-7
[17] Id.
[18] See **Exhibit G**- Spotify's First Interrogatories, p. 13, Int. No. 8

13

Torres-Oyola, Ferraiuoli and Tierra as opposed to Telinit. Moreover, Spotify requests Tierra's phone records of telephones used for business or personal reasons. Such request is overly brad and burdensome to Tierra, a non-party to this action, because it will require a request to third parties and related costs and expenses. Phone records are not readily available. Moreover, Tierra's personal phone records are clearly outside the scope of relevancy. We stress again that the discovery orders issued by the Texas District Court imply a duty to seek information from the parties to the litigation and to resolve any discovery controversies that may surface in accordance and within the bounds of the Discovery Order. Parties should not be allowed to circumvent such procedures by resorting to the subpoena power.

### c. The subpoenas command the production of documents beyond the 100 miles provided for in Rule 45(c)(2)(a).

Finally, Spotify's subpoena place an undue burden on the Movants by commanding them to produce documents in the State of California when their place of business is in San Juan, Puerto Rico. Fed. R. Civ. P. 45(c)(2)(a) states that "A subpoena may command: (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person...". Spotify, in an attempt to harass non-parties to the litigation, is commanding Torres-Oyola, Ferraiuoli and Tierra to produce documents in the opposite side of the country, 3,602.71 miles away from where Torres-Oyola resides and is employed, and from where Tierra send Ferraiuoli conduct business. At the very least, Spotify has a duty to follow the clear text of Fed. R. Civ. P. 45(c)(2) and designate a location for

production in Puerto Rico. Its willingness to do the complete opposite only furthers their mischievous intent to harass with the objected subpoenas.

WHEREFORE, we move this court to quash the subpoenas addressed to Torres-Oyola, Ferraiuoli and Tierra in their entirety or to modify them to exclude any privileged or protected information, including any information that would be privileged and thus not subject to discovery if sought directly from Plaintiff, Telinit, and that any production be made in San Juan, Puerto Rico.

RESPECTFULLY SUBMITTED

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was notified to the following attorneys: Greg Chuebon, Jeffrey Ostro and Harrison Frahn, 2475 Hanover Street, Palo Alto, California 94304, and through their electronic mail: gcheubon@stblaw.com, jostrow@stblaw.com, hfrahn@stblaw.com.

August 14, 2014

Ferraiuoli LLC
PO Box 195168
San Juan, PR 00919-5168

221 Plaza Bldg., 5th Floor
221 Ponce de León Ave.
San Juan, PR 00917
Tel.: (787) 766-7000
Fax: (787) 766-7001

Jenyfer García-Soto
USDC-PR No. 222209
jgarcia@ferraiuoli.com